UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ELVIRA CERVANTES,

        Plaintiff,

   v.

METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant.

NO. CIV. S 03-1672 MCE PAN

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff Elvira Cervantes ("Plaintiff") alleges that Metropolitan Life Insurance Company ("MetLife") violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq. ("ERISA"), when it denied her application for disability insurance benefits under her employer's group short term disability policy.[1]  MetLife now moves for summary judgement as to Plaintiff's claim.

///

---

[1] Both parties agree, and the Court concurs, that the employee benefit plan at issue in this case is governed by ERISA.

1

For the reasons set forth below, Defendant's summary judgment motion is granted.

## BACKGROUND

At all times relevant to this action, Plaintiff was employed as a personal banker for Wells Fargo Bank ("Wells Fargo"). As part of Wells Fargo's employee benefits package, Plaintiff was entitled to participate in its group short term disability plan (the "Plan").[2]

Wells Fargo both sponsors the Plan and acts as Plan Administrator. The Plan Administrator has full discretionary authority to administer and interpret the Plan. (Undisputed Fact No. 5). Wells Fargo has delegated its authority to receive, process and administer benefit claims to MetLife as the Plan Claims Administrator. (Undisputed Facts Nos. 5 & 6).

The Plan provides for payments as a result of an insured's "...disabling injury or illness that is: Documented by disabling signs and symptoms, as certified by approved care providers; and Prevents [the insured] from performing some or all of [his or her] regular job duties." (Undisputed Fact No. 4).

On November 6, 2000, Plaintiff underwent surgery to remove her ovaries. Plaintiff submitted a claim for short term disability payments on November 27, 2000. Thereafter, Plaintiff's physician, Dr. Melba Berbano, advised MetLife by telephone that Plaintiff would be capable of returning to work on December 18, 2000. (Undisputed Fact No. 9).

---

[2] A true and correct copy of the Wells Fargo & Company's Benefit Book and Short-Term Disability Benefit Plan Summary Plan Description is attached as Exhibit A to the Declaration of Laura Sullivan.

2

By letter dated December 1, 2000, MetLife advised Plaintiff that her application for benefits was approved from November 3, 2000, through December 17, 2000.  On or about December 14, 2000, Dr. Berbano provided MetLife a fitness certification ("Certification") regarding Plaintiff's then existing condition. (Undisputed Fact No. 13).  The physical capabilities portion of the Certification indicated that Plaintiff could intermittently sit, stand and walk.  The Certification also established that Plaintiff could reach above shoulder level and operate a motor vehicle.  Dr. Berbano released Plaintiff to resume full time duties with no restrictions but noted that the release was only effective after Plaintiff's period of disability was concluded. In the Certification's additional comments section, Dr. Berbano typed the following: "Extension of her disability.  Due to post op pain, headache, fatigue and hypertension.  Pt will return to work on 01/15/01."  (Undisputed Fact No. 14).

   On or about January 31, 2001, MetLife referred Plaintiff's claim to a nurse consultant for review.  The nurse consultant concluded that Plaintiff was not disabled beyond December 17, 2000, and therefore not entitled to additional benefits.  By letter dated February 2, 2001, MetLife advised Plaintiff that her claim for benefits beyond December 17, 2000, was being withdrawn for failure to demonstrate continued severity of total disability.  (Undisputed Fact No. 18).  That same letter instructed that any request for review of MetLife's decision should be forwarded to: "Group Insurance Claim Review, Metropolitan Life Insurance Company, P.O. Box 1088, Glastonbury, CT 06033-6088."

3

1    On February 21, 2001, Dr. Berbano requested that MetLife
2 reexamine its decision to deny Plaintiff's request for extended
3 benefits.  Dr. Berbano's request specified that Plaintiff was
4 unable to perform her regular work duties through January 16,
5 2001 due to "post-operative pain in lower abdomen with
6 fatigability, and headaches, as well as hypertension."  This
7 request was addressed to MetLife directly.
8    By letter dated March 19, 2001, MetLife answered Dr.
9 Berbano's request as follows: "This letter is to confirm receipt
10 of your appeal request.  Your file can not be referred for
11 independent claim review due to lack of office notes 12/18/00
12 through 01/16/01.  Please submit requested medical by 04/02/01 or
13 claim will be referred for independent claim review as is."
14 Thereafter, neither Plaintiff nor her physician provided any
15 medical evidence substantiating Plaintiff's disability.
16 (Undisputed Fact No. 25).
17    By letter dated April 27, 2001, MetLife upheld its denial of
18 benefits based in part on Plaintiff's failure to tender
19 additional medical evidence as requested.  In this letter,
20 MetLife instructed Plaintiff to direct any additional medical
21 information that would support her claim to: "Wells Fargo, Sixth
22 and Marquette, Minneapolis, MN 55479."

**STANDARD**

24   Where the decision to grant or deny benefits is reviewed for
25 abuse of discretion, a motion for summary judgment is merely the
26 conduit to bring the legal question before the Court and the
27 usual tests of summary judgment, such as whether a genuine
28 dispute of material fact exists, do not apply.

4

1  Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).
2  The issue then becomes whether an abuse of discretion is the
3  proper standard of review in the present action.
4       Plaintiff urges that a de novo standard of review is
5  applicable here.  In support of this argument, Plaintiff quotes
6  Firestone Tire & Rubber Co. v. Bruch wherein the Supreme Court
7  held that "a denial of benefits challenged under [ERISA] is to be
8  reviewed under a de novo standard unless the benefit plan gives
9  the administrator or fiduciary discretionary authority to
10 determine eligibility for benefits or to construe the terms of
11 the plan."  489 U.S. 101, 115 (U.S. 1989).  In instances where
12 discretionary authority has been granted, case law is clear that
13 an abuse of discretion standard is proper.  See Nord v. Black &
14 Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir. 2004).  In
15 light of the Ninth Circuit's teaching, this Court declines
16 Plaintiff's request to apply a de novo standard of review because
17 discretionary authority has been granted pursuant to the terms of
18 the Plan.
19      Plaintiff next argues that the existence of an actual
20 conflict of interest subjugates the less deferential de novo
21 standard.  In fact, the Supreme Court expressly addressed this
22 issue and held that if a benefit plan gives discretion to an
23 administrator who is operating under a conflict of interest, that
24 conflict must be weighed as a "facto[r] in determining whether
25 there is an abuse of discretion."  Firestone, 489 U.S. at 115.
26 ///
27 ///
28 ///

Contrary to Plaintiff's assertion, in the event of an actual conflict of interest, the standard does not change but the Court must weigh that conflict as a factor in determining whether there was an abuse of discretion.

There is no evidence in the record tending to show that MetLife was operating under an actual conflict of interest. However, even assuming, without deciding, that an apparent conflict of interest exists, Plaintiff must put forth material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused the breach. *See* Nord, 356 F.3d at 1010. Plaintiff failed to provide any evidence beyond her bare assertion that MetLife was operating under an actual or apparent conflict or that self-interest caused a breach of its fiduciary duty as the Plan Claims Administrator. Accordingly, the Court finds that an abuse of discretion standard is applicable to the present action.

**ANALYSIS**

**1. Exhaustion of Administrative Remedies**

MetLife argues that Plaintiff failed to exhaust her administrative remedies before bringing the present action entitling it to summary judgment. MetLife correctly points out that under ERISA, employee benefit plans are required to provide internal dispute resolution procedures for participants whose claims have been denied. *See* 29 U.S.C. § 1133. The general rule governing ERISA claims is that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court. Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995).

MetLife principally argues that Plaintiff's request for review fails to comply with the Plan's internal appeals process because the request came from Dr. Berbano rather than Plaintiff. Under the terms of the Plan, an "authorized representative" may appeal an adverse benefits decision on behalf of an insured. Nothing in ERISA or in the applicable portions of the Code of Federal Regulations defines "authorized representative" for the purposes of communicating with a plan administrator. The Code of Federal Regulations does, however, permit an ERISA plan to establish reasonable procedures for determining whether an individual has been authorized to act on behalf of an insured. *See* 29 CFR § 2560.503-1(4)(2005). Despite this express authority, the Plan is silent on this issue. Since MetLife failed to exercise its right to delimit who may qualify as a duly authorized representative under the Plan, the Court finds that Plaintiff was free to select Dr. Berbano as her personal representative in connection with her disability.

MetLife also contends that Plaintiff's appeal was insufficient because it was directed to MetLife rather than Wells Fargo. MetLife, however, disregards the plain language of the Plan. Specifically, the Summary of Material Modifications to the 2000 Benefits Book reads as follows:

> "<u>Effective May 1, 2000</u>, if your request for STD benefits is denied, or you believe you should be entitled to a different amount of STD benefits, or you disagree with any determination that has been made reflecting your benefits under the STD Plan, you may present a claim in writing for review by the <u>Claims Administrator</u>, <u>MetLife</u> within 60 days."

(Sullivan Decl. ¶2, Ex. A, MET 0078).

///

7

It is clear that an insured is to seek review of a benefit determination with MetLife rather than with the Plan Administrator, Wells Fargo.  In addition, MetLife's February 2, 2001, letter instructs Plaintiff to seek review of adverse decisions from MetLife directly.  While MetLife's April 27, 2001, letter instructed Plaintiff to forward supplemental medical evidence to Wells Fargo, the plain language of the Plan together with MetLife's February 2, 2001, letter make clear that Plaintiff's request for review was correctly submitted.

Accordingly, the Court finds that Plaintiff has exhausted her administrative remedies under the terms of the Plan.

**2.  The Court's Review of MetLife's Benefits Determination**

MetLife's benefits determination is subject to an abuse of discretion review.  Under this standard of review, the Court is not seeking to resolve whether there is an issue of material fact; instead, the Court is reviewing MetLife's decision to determine whether it is "so patently arbitrary and unreasonable to lack foundation in factual basis."  Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993).

Plaintiff argues at length that MetLife abused its discretion because it sought review of Plaintiff's claim from a "nurse consultant" rather than a licensed medical professional.[3]  Plaintiff's assertion, however, is wholly without merit.  Neither the terms of the Plan nor relevant case law provide any support for Plaintiff's argument.

---

[3] The record is unclear regarding whether the nurse consultant engaged by MetLife is a licensed medical professional. For purposes of this summary judgement motion, the Court assumes MetLife's consultant is not a licensed medical professional.

8

In the absence of such authority, the Court declines to create a requirement that a plan administrator or its fiduciary engage a licensed medical professional to review its benefit determinations. MetLife's decision to engage a nurse consultant to review Plaintiff's claim was neither patently arbitrary nor unreasonable.

Plaintiff next contends that MetLife should have accorded her treating physician's opinions more weight than the opinions of its nurse consultant. On the contrary, the Supreme Court has expressly rejected the notion that the opinions of an insured's treating physician should be accorded more weight than other objective medical evidence in the insured's record. *See* Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). MetLife was not required, nor should it have, accorded greater deference to Dr. Berbano's opinions than other evidence in the record before it.

Finally, Plaintiff claims this Court must only find that MetLife more likely than not abused its discretion in denying her claim. Again, the law in this Circuit is contrary. The Ninth Circuit has instructed that only when a plan administrator relies on clearly erroneous findings of fact is it guilty of an abuse of discretion. *See* Bendixen, 185 F.3d at 944. A finding is clearly erroneous when "although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Boyd v. Bell, 2005 U.S. App. LEXIS 11057, 13-14 (9th Cir. 2005)(Internal quotations and citations omitted).

///

Here, MetLife had verbal authorization from Dr. Berbano that Plaintiff could return to work on December 18, 2000. In addition, Dr. Berbano submitted a physical certification indicating that Plaintiff could perform a number of functions relevant to her work including sitting, standing and driving a car. Neither Plaintiff nor Dr. Berbano submitted any additional medical evidence of Plaintiff's condition beyond December 17, 2000, as specifically requested by MetLife. Although there are facts in the record that could support a finding contrary to that made by MetLife, this Court is not left with the definite and firm conviction that a mistake has been committed.

**CONCLUSION**

For the reasons more fully explained above, MetLife's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: July 18, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE